**James FLOWERS, Petitioner-Appellant,**

v.

**Frank BLACKBURN, Warden, Louisiana State Penitentiary, Angola, Respondent-Appellee.**

No. 85–3315.

United States Court of Appeals, Fifth Circuit.

Jan. 8, 1986.

shall be the amount of the adjustment for that        taxable year.

Michelle Gaudin and Frank DeSalvo, New Orleans, La., for petitioner-appellant.

Wm. C. Credo, and Dorothy A. Pendergast, Asst. Dist. Attys., Gretna, La., for respondent-appellee.

Before GEE, RUBIN and RANDALL, Circuit Judges.

RANDALL, Circuit Judge:

James Flowers was convicted in 1982 of first-degree murder in connection with the brutal rape and slaying of a 70-year old woman. The jury imposed the death penalty. He appeals from the dismissal of his petition for a writ of habeas corpus, 28 U.S.C. §§ 2241, 2254. Because the jury instructions at the guilt/innocence phase of the trial could have improperly allowed the jury to find Flowers guilty of first-degree murder without finding that he had a specific intent to kill, as required by state law, we reverse.

### I.

A seventy-year old woman, Madeline Malmstrom, was raped and killed in her house in Gretna, Louisiana by at least one intruder on October 23, 1981. The assailant or assailants had gained access through a broken window and ransacked the house, apparently in search of valuables. On October 24, police received a tip that James Flowers was in a particular neighborhood in Gretna in a small white car, and that he had objects stolen from "that lady that was murdered on Jefferson Street yesterday." An officer on patrol in the neighborhood spotted a car matching the description, and pulled it over. He asked the driver for his license. The license indicated that the driver was named James Flowers. Upon looking in the window, the officer saw several marijuana cigarettes in the ashtray, and ordered the driver from the car. The officer seized about four bags of marijuana and several items of costume jewelry. Flowers was arrested on narcotics charges, and taken to police headquarters, where a search of Flowers yielded a knife. Thereupon, he was charged with possession of a concealed weapon by a convicted felon.

Relatives of the victim identified the jewelry seized in the car as having belonged to the victim. Upon being informed that he was under investigation for first-degree murder and aggravated burglary, Flowers made a statement admitting that he had taken part in the burglary, but claiming that a sixteen-year old confederate, Olin Grant, had entered the house alone and had killed the victim. After being formally arrested on first-degree murder charges a short while later, Flowers made another statement, asserting that his participation in the crime had been limited to helping Grant gain entry to the house.

The trial against Flowers alone [1] commenced on February 2, 1982. The State introduced certain evidence that could be interpreted to link Flowers with the slaying. First, Flowers' blood type, type O, was the same as the blood type of the individual who raped the woman. Second, blood stains on the victim's neck carried the imprint of a sneaker or tennis shoe that

---

**1.** Grant was also arrested and charged with first-degree murder, and at his request his trial was severed from Flowers'. Counsel represents that Grant pled guilty to manslaughter in connection with the slaying, apparently after Flowers' trial, and was sentenced to 21 years incarceration.

an expert witness said was similar to that worn by Flowers on the day he was arrested. Third, the coroner testified that the victim might have been strangled with a belt similar to that worn by Flowers. The prosecution introduced as evidence Flowers' post-arrest statement regarding his involvement in the crime. Grant did not testify against Flowers, nor did the State introduce evidence of what kind of shoes and belt Grant wore when he was arrested. The evidence indicated that Grant also has type O blood.

The trial judge instructed the jury on the elements of first-degree murder, second-degree murder, and voluntary manslaughter. The judge stated that to find Flowers guilty of first-degree murder, the jury must find:

(1) that the defendant killed the victim; (2) that the defendant had a specific intent to kill or to inflict great bodily harm; and (3) that the defendant was engaged in the perpetration or attempted perpetration of an aggravated burglary, and/or aggravated rape, and/or an armed robbery or simple robbery.

The second-degree murder instruction stated that in order to convict, the jury must find:

(1) that the defendant killed the victim; [and] (2) that the defendant acted with the specific intent to kill or to inflict great bodily harm; or (1) that the defendant killed the victim whether or not he had an intent to kill or to inflict great bodily harm; and (2) that the killing took place while the defendant was engaged in the commission or attempted commission of an armed robbery or simple robbery or any of the crimes enumerated above.

For a manslaughter conviction, the judge stated that the jury must find:

(1) that the defendant killed the victim; and (2) that the defendant had a specific intent to kill or inflict great bodily harm; and (3) that the killing was committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Or, (1) that the defendant killed the victim whether or not he had an intent to kill or to inflict great bodily harm; and (2) that the killing took place while the defendant was engaged in the perpetration or attempted perpetration of any felony not enumerated in the definition of either first-degree murder or second-degree murder or any misdemeanor directly affecting the person.

The judge then defined specific intent as: that state of mind which exists when the circumstances indicate that the defendant actively desired the prescribed [sic] criminal consequences to follow his act or failure to act.

Immediately thereafter, the trial judge charged the jury on the law of accomplice liability in Louisiana as follows:

All persons concerned in the commission of a crime whether present or absent and whether they directly commit the act constituting the offense aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime [are] principals. In other words to be concerned in the commission of a crime, it must be shown that the person or persons charged did something knowingly and intentionally in furtherance of the common design, or to put it another way, that he or they aided, abetted and assisted in the perpetration of the offense. All persons knowing the unlawful intent of the person committing the crime who were present consenting thereto, and aiding and abetting, either by furnishing the weapons of attack, encouraging by words or gestures, or endeavoring at the time of the commission of the offense to secure the safety or concealment of the offender are principals and equal offenders and subject to the same punishment. To render one guilty as a principal, he must have committed the offense himself or in some way participated in the commission of the crime, or he must have aided, assisted or abetted the actual perpetrator of the deed before it might be said that he

was concerned in the commission of the crime.[2]

The jury returned a verdict of guilty of first-degree murder, and subsequently elected to impose the death penalty. The conviction was affirmed on direct appeal. *State v. Flowers*, 441 So.2d 707 (La.1983) *cert. denied* 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ed.2d 476 (1984). A state habeas corpus petition was orally denied after an evidentiary hearing in state district court on August 31, 1984. The Louisiana Supreme Court refused relief without an opinion. *State ex rel. Flowers v. Maggio*, 466 So.2d 1293 (La.1985). An execution date of April 15, 1985 was set.

The instant petition was filed in the United States District Court for the Eastern District of Louisiana on April 11, 1985. The petition set forth the following grounds for relief: (1) jury instructions at the guilt/innocence phase of the trial were unconstitutional because they relieved the state of its burden of showing specific intent to kill; (2) jury instructions at the sentencing phase were unconstitutional for the same reason; (3) ineffective assistance of counsel; (4) improper jury selection; (5) inadequate appellate review of the sentence; (6) a *Miranda* violation; (7) electrocution is cruel and unusual punishment; (8) racial discrimination in sentencing; (9) capital punishment is an excessive penalty; and (10) the cumulative effect of "infirmities" in the trial and review constituted a due process violation. The petition and accompanying motion for stay of execution were denied in a one-page order on April 12. The dismissal was apparently pursuant to Rule 4, Rules Governing § 2254 Cases in the United States District Courts, which allows for summary dismissal of certain petitions without requiring service on or an answer by the State.[3] The district court denied a certificate of probable cause for appeal.

Flowers applied to this court for a certificate of probable cause and a stay of execution. The court on April 12 granted the stay, and we remanded the case to the district court "with instructions that a statement of reasons be provided for the denial of each claim presented," pursuant to the rule of *Willie v. Maggio*, 737 F.2d 1372, 1377 (5th Cir.1984) (district court must set forth specific findings of fact and conclusions of law that underlie its ultimate conclusion to grant or deny relief). *Flowers v. Blackburn*, 759 F.2d 1194, 1195 (5th Cir.1985).

On April 16, 1985, again apparently pursuant to Rule 4 and without any papers responsive to the petition having been filed

---

**2.** Prior to the instructions, the prosecutor stated in his closing argument that "[a]ll persons concerned in the commission of a crime are equally guilty of that crime."

It should be noted that defense counsel did not object to the charge as given or to the prosecutor's comments, despite the contemporaneous objection rule of La.Code Crim.P. art. 841. Further, the issue apparently was not presented to the Louisiana Supreme Court on direct appeal. However, the State has not raised the issue of the procedural bar of *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977), in these proceedings, nor has it briefed or even mentioned the issue on appeal. "[W]e have repeatedly refused to examine issues not raised in the appellate briefs absent the possibility of injustice so grave as to warrant disregard of the usual procedural rules," *McGee v. Estelle*, 722 F.2d 1206, 1213 (5th Cir.1984) (en banc) (refusing to examine *sua sponte* exhaustion requirement of § 2254(d)), and we refuse to do so here.

**3.** Rule 4 states in full:

The original petition shall be presented promptly to a judge of the district court in accordance with the procedure of the court for the assignment of its business. The petition shall be examined promptly by the judge to whom it is assigned. If it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified. Otherwise the judge shall order the respondent to file an answer or other pleading within the period of time fixed by the court or to take such other action as the judge deems appropriate. In every case a copy of the petition and any order shall be served by certified mail on the respondent and the attorney general of the state involved.

by the State,[4] the district judge dismissed the petition as "without merit." On the jury instruction issue, the district court concluded that "no reasonable juror could have misconstrued the instructions given in such a way as to convict the defendant, petitioner, without a finding that the petitioner, Flowers, had the requisite intent to kill." Flowers again sought a certificate of probable cause, and on April 23 we granted the application and remanded the case to the district court, because at least three of the petition's arguments "cannot be adequately assessed without reference to the trial transcript." We included instructions "to obtain the record of the state court trial, to review petitioner's claims in the light of the record, and to enter new findings and conclusions as necessitated by the review." 759 F.2d 1195 (5th Cir.1985).

On May 1, the district court again ordered the petition dismissed under Rule 4 without requiring an answer by the State.[5] It maintained its conclusion that the jury instructions were not flawed, and rejected all other claims presented. Flowers sought another certificate of probable cause. We granted the certificate and ordered the appeal docketed, 764 F.2d 276. The State has filed a brief in this court in opposition to the writ.

## II.

This case presents the issue whether the jury instructions in this first-degree murder prosecution satisfy the principles of *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and its progeny, including *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). Specifically, we must consider the aspects of the instruction that "to be concerned in the commission of a crime, it must be shown that the person ... aided, abetted and assisted in the perpetration of the offense," and "[a]ll persons knowing the unlawful intent of the person committing the crime who were present ... are principals, and equal offenders, and subject to the same punishment." As stated in *Francis v. Franklin*, — U.S. —, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), "[t]he question is whether these instructions, when read in the context of the jury charge as a whole, violate the Fourteenth Amendment's requirement that the State prove every element of a criminal offense beyond a reasonable doubt. *See Sandstrom, supra; In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970)." *Franklin*, 105 S.Ct. at 1968. The Supreme Court in *Franklin* recently stated:

> The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 [90 S.Ct. 1068, 1072, 25 L.Ed.2d 368] (1970). This "bedrock, 'axi-

---

**4.** The record indicates that Flowers' counsel mailed a copy of the petition to the State Attorney General and the appropriate District Attorney on April 11.

**5.** As a matter of procedure, the transcript or relevant portions of it are normally obtained by the district court from the State in its answer. Rule 5. However, because the district judge dismissed the petition under Rule 4, the State did not file an answer. The record is unclear by what means the district judge obtained the transcript of Flowers' trial. The certified copy of a state trial transcript is, of course, in the possession of the State. When it appears necessary for the district court to examine the state trial transcript, the district court should order service of the petition and an answer by the State pursuant to Rule 5, which controls transcript production issues.

Under these circumstances, the district court's use of a Rule 4 dismissal was inappropriate under the standard set forth in *Blackledge v. Allison*, 431 U.S. 63, 78, 97 S.Ct. 1621, 1631, 52 L.Ed.2d 136 (1977) (only if allegations of petition, when measured against the record, are "patently false or frivolous," is summary dismissal appropriate). *See also Scott v. Estelle*, 567 F.2d 632, 633 (5th Cir.1978) ("unless it appears from the face of the petition and exhibits that the petitioner is not entitled to relief, the district judge shall order the respondent to file an answer or to take other appropriate action"). Rule 4 allows the district court to "screen out *frivolous* applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer," Advisory Committee Note to Rule 4 (emphasis added); *Williams v. Estelle*, 681 F.2d 946 (5th Cir.1982).

omatic and elementary'" [constitutional] principle, *id.* at 363 [90 S.Ct. at 1072], prohibits the State from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime [citation omitted]. The prohibition protects the "fundamental value determination of our society," given voice in Justice Harlan's concurrence in *Winship,* "that it is far worse to convict an innocent man than to let a guilty man go free." 397 U.S. at 372 [90 S.Ct. at 1077].

*Franklin,* 105 S.Ct. at 1970–71.

■ The following analytical approach is used in cases raising this issue. First, the court must determine whether based on the specific language of the instruction the challenged instruction creates a constitutionally objectionable "mandatory presumption," or "merely a permissive inference," on an essential element of the crime. *Franklin,* 105 S.Ct. at 1971 (citing *Sandstrom,* 442 U.S. at 514, 520–24, 99 S.Ct. at 2454, 2457–59; *Ulster County Court v. Allen,* 442 U.S. 140, 157–63, 99 S.Ct. 2213, 2224–27, 60 L.Ed.2d 777 (1979)). Second, "[i]f a specific portion of the jury charge, considered in isolation, could reasonably have been understood as creating a presumption ..., then the potential offending words must be considered in the context of the charge as a whole." *Franklin,* 105 S.Ct. at 1971 (citing *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973)).

### A.

■ The first prong of our analysis requires the court to "focus ... on the specific language challenged," *Franklin,* 105 S.Ct. at 1971, to determine whether a mandatory presumption, either conclusive or rebuttable, or merely a permissive inference is created. "A mandatory presumption instructs the jury that it *must* infer the presumed fact if the State proves certain predicate facts. A permissive inference suggests to the jury a possible conclu-

sion to be drawn if the State proves predicate facts, but does not require the jury to draw the conclusion." *Id.* (emphasis added). Permissive inferences violate the due process clause "only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury." *Id.* (citing *Ulster County Court,* 442 U.S. at 157–63, 99 S.Ct. at 2224–27). Mandatory presumptions violate the due process clause "if they relieve the State of the burden of persuasion on an element of an offense." *Franklin,* 105 S.Ct. at 1971 (citing *Patterson v. New York,* 432 U.S. 197, 215, 97 S.Ct. 2319, 2329, 53 L.Ed.2d 281 (1977); *Sandstrom,* 442 U.S. at 520–24, 99 S.Ct. at 2457–59; *Mullaney v. Wilbur,* 421 U.S. 684, 698–701, 95 S.Ct. 1881, 1889–90, 44 L.Ed.2d 508 (1975)).

■ Before we may determine whether a challenged instruction relieved the State of the burden of persuasion on an element of the crime of which the defendant was convicted, we must examine the elements of the crime under state law. *Clark v. Louisiana State Penitentiary,* 697 F.2d 699, 700 (5th Cir.1983); *cf. United States v. Merkt,* 764 F.2d 266, 272 (5th Cir.1985). Flowers was convicted of first-degree murder, which at the time of his trial was defined as follows:

First degree murder is the killing of a human being:

(1) When the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of an aggravated kidnapping, aggravated escape, aggravated arson, aggravated rape, aggravated burglary, armed robbery, or simple robbery....

La.Rev.Stat.Ann. § 14:30 (West Supp.1985). Further, as the jury was charged, under the Louisiana law of accomplice liability, La.Rev.Stat.Ann. 14:24 (West 1974), "[a]ll persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense aid and abet in its commission, or directly or indirectly coun-

sel or procure another to commit the crime, are principals." However, long before Flowers' trial, the Louisiana Supreme Court placed an important limitation on the use of accomplice liability for specific intent crimes such as first-degree murder:

> Under R.S. 14:24, not all principals are automatically guilty of the same grade of offense. One who aids and abets in the commission of a crime may be charged and convicted with a higher or lower degree of the crime depending upon the mental element proved at trial.... Thus, an individual may only be convicted as a principal for those crimes for which he has the requisite mental state. *In the case of a first degree murder conviction, the requisite mental state is that the defendant had the specific intent to kill. It is not enough to find merely that his co-conspirator or accomplice had the necessary mental state, since this intent cannot be inferred to the accused.* It must also be shown that this accused also had the specific intent to kill.

*State v. Holmes*, 388 So.2d 722, 726 (La. 1980) (emphasis added).[6] Other Louisiana courts have reiterated this requirement. *See, e.g., State v. Kohler*, 434 So.2d 1110, 1118–19 (La.App. 1st Cir.1983). Therefore, as a matter of Louisiana law, the State was obligated to prove that *Flowers* "subjectively desired the prohibited result," *id.* at 1119, in order to support *Flowers'* conviction for first-degree murder.

▮ The jury instruction in this case that all participants in a crime "are principals, and equal offenders, and subject to the same punishment," plainly "reliev[ed] the State of the burden of proof enunciated in *Winship* on the critical question of ... state of mind." *Sandstrom*, 442 U.S. at 521, 99 S.Ct. at 2458. In effect, the charge permitted the State to secure a conviction by showing that *either* Grant *or* Flowers had the requisite specific intent to kill. With ample evidence that the killing was intentional and that only Flowers and Grant were involved in the crime, the instruction could have been reasonably interpreted by a juror to mean that the State was not required to introduce evidence on Flowers' subjective intent.[7] The instruction could have been interpreted as creating a mandatory—and conclusive—presumption that if either perpetrator had a specific intent to kill. That is simply prohibited by Louisiana state law and hence by the due process clause.

---

**6.** The challenged instruction in *Holmes*, which was upheld, stated as follows:

> "The law as to principals reads as follows: All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission or directly or indirectly counsel or procure another to commit the crime are principals. One who aids and abets in the commission of a crime may be charged and convicted with a higher or lower degree of crime depending on the mental element proved at trial. The first degree murder statute, with which this defendant is charged, requires proof of specific intent on the part of this defendant. I have previously read to you the definition of specific criminal intent."

388 So.2d at 725. The obvious difference between the *Holmes* instruction and Flowers' instruction is the last three sentences of the *Holmes* instruction, which were simply not given to the jury here. The trial judge in *Holmes* carefully explained that regardless of the law of principals, in order to convict for first-degree murder the jury must find that the defendant had a specific intent to kill. The trial judge here did not do so.

**7.** The State's brief contains the following concession: "The State admits that Petitioner's assertion of innocence at trial might have created the possibility of an unconstitutional conviction *had there been any evidence at all produced implicating Grant as the murderer.*" Brief of Appellee at 9 (emphasis in original). Evidence that Grant was the murderer was, of course, introduced *by the State* in the form of Flowers' post-arrest "confession," which stated that Grant had killed the victim. Therefore, the State all but expressly admits that this conviction was unconstitutional. The jury had evidence before it that either Grant or Flowers had done the killing, that both helped plan the robbery, and that the killing was intentionally committed during the course of a robbery or rape. They also had an instruction that the specific intent of one perpetrator could be imputed to the other, despite the rule of *State v. Holmes*. Under these circumstances, the trial judge effectively withdrew the issue of Flowers' subjective intent from the jury.

This instruction is every bit as objectionable as the one found to be constitutionally infirm in *Clark v. Louisiana State Penitentiary,* 694 F.2d 75 (5th Cir.1982), *modified on reh'g,* 697 F.2d 699 (5th Cir.1983). The instruction in *Clark,* also a case involving two defendants accused of first-degree murder in connection with an armed robbery, included a criminal conspiracy instruction that each co-conspirator "is deemed to assent to" whatever is done in furtherance of the conspiracy. This court determined the instruction violated the due process clause because it permitted a conviction of first-degree murder based on a finding that *either* participant in the crime had a specific intent to kill, which was not allowed under Louisiana law. To paraphrase *Clark:*

> An instruction to the jury to deem [Grant's] acts to be intended by [Flowers] relieved the prosecution of its burden [to prove under Louisiana law that Flowers intended to kill or do great bodily harm] in violation of *Mullaney,* and cast the burden of disproving that intent upon [Flowers], in violation of *Sandstrom....*

> Before the constitution will allow the conviction ... we must know that the jury found beyond any reasonable doubt that [Flowers], personally, did have that mind to kill.

694 F.2d at 77–78. *See also Garland v. Maggio,* 717 F.2d 199, 203 (5th Cir.1983) (instruction that "effectively relieves the state of its constitutional burden of proving the element of requisite intent" violated due process clause).[8] A reasonable juror could have concluded that the State needed to show only that either Flowers or Grant killed the victim with the requisite specific intent, and that the burden was on Flowers to prove that neither he nor Grant had specific intent. Therefore, standing alone,

the challenged instruction relieved the State of its affirmative burden of persuasion on one crucial element of the crime charged.

**B.**

Obviously, the jury heard more than the several sentences challenged and discussed above. "The jury charge taken as a whole might have explained the proper allocation of burdens with sufficient clarity that any ambiguity in the particular language challenged could not have been understood by a reasonable juror as shifting the burden of persuasion." *Franklin,* 105 S.Ct. at 1973 (citing *Cupp v. Naughten,* 414 U.S. at 147, 94 S.Ct. at 400). The State contends that the trial court's instructions were not "erroneous or prejudicial." It argues that the "jury was clearly instructed that specific intent is an essential element of the crime of first degree murder." Appellee's Brief at 7. True enough. The instructions required that the jury find the killing was intentional in order to convict Flowers of first-degree murder; their flaw was that they did not specify *who* must possess the requisite intent in order to find Flowers guilty.

Admittedly, the instructions did state in several places that the jury must find that "the defendant"—Flowers—acted with specific intent. But the unequivocal language of the flawed aspect of the instruction could have led a reasonable juror to conclude that his job was over when he determined that *someone* had killed the victim with specific intent. Nowhere in the instruction are the flawed sentences contradicted or minimized. Nowhere do the instructions state that *only* Flowers' intent was at issue, and in that regard, they stand in sharp contrast to those in *Holmes,* 388 So.2d at 725. The general instructions on

---

**8.** Counsel for the State stated at oral argument that *Clark* and *Sandstrom* are distinguishable from this case because the former were "conspiracy cases," and this is a case involving the law of principals. In addition to being simply wrong about *Sandstrom* being a conspiracy case, 442 U.S. at 512, 99 S.Ct. at 2453, a case that involved only one actor, counsel's argument

misconceives the nature of our inquiry. We examine whether Louisiana state law would permit a first-degree murder conviction without proof of the defendant's specific intent in a situation where two or more individuals were involved in the homicide. *Holmes* answers that question in the negative. 388 So.2d at 726.

the elements of the crime "are not 'rhetorically inconsistent'" with an instruction that permitted—or indeed, required—the jury to impute specific intent from one principal to another. *Franklin*, 105 S.Ct. at 1974 (quoting *Sandstrom*, 442 U.S. at 518–19 n. 7, 99 S.Ct. at 2456 n. 7). Again paraphrasing the court in *Clark:*

> The [intent-imputing] instruction may not have been read by any juror as affecting the requirement that they find [Flowers] guilty of lethal purpose. On the other hand, the jurors may have accepted the literal meaning of the instruction as stated above. The fact that a reasonable juror could have done so means that we must discount the possibility that the jurors actually did proceed as the trial court intended. *See Sandstrom.* We are left with "a level of uncertainty and unreliability [in] the fact-finding process that cannot be tolerated in a capital case." *Beck v. Alabama*, 447 U.S. 625, 643 [100 S.Ct. 2382, 2392, 65 L.Ed.2d 392] (1980).

694 F.2d at 78.

A reasonable juror in this case might have concluded that his examination of the specific intent element of the crimes charged needed to go no further than a finding that either Flowers or Grant acted with specific intent to kill. A reasonable juror could have been in the "quandary," *Franklin*, 105 S.Ct. at 1976, of choosing between the instruction that they must find that "the defendant" acted with specific

intent, and the instruction that the intent of one principal could be imputed to the other. The charge read as a whole does not alleviate the error. Therefore, the jury charge violated Flowers' right to due process.[9]

### III.

For the foregoing reasons,[10] the order of the district court is reversed and this case is remanded to the district court with instructions to grant the petition unless the State provides Flowers with a new trial commencing within 120 days.

REVERSED AND REMANDED.

---

9. The State does not expressly discuss whether the harmless error doctrine applies on the basis of the record evidence in this case, and does not cite the controlling cases on the issue. The Supreme Court has not resolved whether the harmless error doctrine is applicable to a *Sandstrom* error. *See Franklin*, 105 S.Ct. at 1977; *Connecticut v. Johnson*, 460 U.S. 73, 86–87, 103 S.Ct. 969, 977, 74 L.Ed.2d 823 (1983) (plurality opinion of Blackmun, J.). Although there is precedent to the contrary, *Hammontree v. Phelps*, 605 F.2d 1371, 1380 (5th Cir.1979), recent cases in this circuit have applied a harmless error test to *Sandstrom*-violative jury instructions. *Garland*, 717 F.2d at 203; *see generally Johnson v. Maggio*, 778 F.2d 1044, 1048 n. 4 (5th Cir.1985).

However, reading the State's brief broadly, the State seems to raise a harmless error argument by contending that "the evidence against Petitioner [as the sole murderer] was over-

whelming." Brief of Appellee at 9. If evidence of Flowers' intent to kill was indeed overwhelming, the harmless error doctrine might be applicable. *Garland*, 717 F.2d at 203. However, even recognizing that intent is usually proved only by circumstantial evidence, the evidence of *Flowers'* intent is far from "overwhelming." The victim was raped by a man with type O blood. Grant and Flowers both have type O blood, as does 40 percent of the population. The State's experts testified that Flowers' shoe "could possibly" have left the mark on the victim's neck, and that a belt similar to Flowers' "could" have produced the abrasions on her neck. This falls far short of "overwhelming" evidence. *Compare id.* at 207 & n. 9.

10. Due to our disposition of this appeal, we need not consider the other contentions raised by Flowers in his petition.