552 So.2d 478 (1989)
STATE of Louisiana
v.
David WEST.
No. KA-7752.
Court of Appeal of Louisiana, Fourth Circuit.
October 12, 1989.
Harry F. Connick, Dist. Atty., of Orleans Parish, Janet Ahern, Asst. Dist. Atty., of Orleans Parish, New Orleans, for appellee.
M. Craig Colwart, Orleans Indigent Defender Program, New Orleans, for defendant.
Before BARRY, WARD and WILLIAMS, JJ.
WILLIAMS, Judge.
Defendant, David West, was convicted in 1986 of first-degree murder. The jury imposed the sentence of life imprisonment without benefit of probation, parole or suspension of sentence. West appeals, assigning as error insufficiency of the evidence and improper jury instructions regarding both reasonable doubt and the law of principals. We affirm the judgment of the trial court.
*479 FACTS
On May 9, 1985 at approximately 9:00 p.m., Consuela Washington returned to the house she shared with her boyfriend, Donald Ray Robertson, and was told by Robertson that Curtis Hardy was also present. Washington entered the bedroom and at some point in the night telephoned her friend Lola King in order to tell King that Hardy was on the way to King's house and that when he arrived King should "sit down and talk to him and get things straight between him and Donald." While speaking with King, Washington looked through the window and saw a "big guy" walking with David West and Curtis Hardy toward a blue car. The big man was apparently restraining Hardy's hands behind his back and appeared to force Hardy into the car. Washington described what she saw to Ms. King.[1]
Officer Norman Taylor of the New Orleans Police Department (NOPD) testified as follows: he and three officers responded to Ms. King's report of the simple kidnapping of Curtis Hardy. The officers and Ms. King proceeded to Washington's house at 1940½ Jackson Avenue. There was no response at the door but as the officers were knocking, Ms. King saw a blue car with the kidnapping suspects drive in front of the house. The officers stopped the car and found Gerald Gerrell in the driver's seat, Donald Ray Robertson in the front passenger's seat and the defendant in the back seat. The officers seized a .357 magnum gun and a pair of blue jeans from the car. The gun contained two empty cartridges and two fully loaded cartridges. The three men were arrested for simple kidnapping.
Detective Norman McCord testified that on May 10, 1985, at approximately 8:20 a.m., he discovered the bodies of Curtis Hardy and Clayton Jones in a 1976 brown Chevrolet Malibu parked near the corner of Toulouse and North Villere. Jones was in the front seat and Hardy was in the back. Both men were blindfolded and had their hands bound behind their backs, Jones with a bandana and Hardy with handcuffs. McCord obtained a search warrant for the vehicle. The search revealed identification of the two victims, jewelry, a radio phone beeper, two hats and some receipts in the name of one of the victims hidden beneath the spare tire.[2]
Mason Spong of the NOPD crime laboratory photographed the car in which the victims were found, lifted fingerprints and collected blood samples from the car. Two fingerprints on the driver's window of the Malibu were determined to match those of Donald Robertson. Tests performed by Edgar Dunn, NOPD criminologist, revealed that the blood samples were Type B. Patsy Daniels, an expert in blood identification typed the blood of the victims and determined that they both had blood Type B. Charles Krone, NOPD criminologist, tested areas of the jeans recovered from the arrestees' car and found that they contained blood Type B.
Bullet fragments were recovered from each skull during an autopsy performed by Dr. Liuzza. Officer Otto Stubbs, NOPD, determined that the two bullets were fired from the .357 magnum gun that was found in the Malibu occupied by Robertson, Gerrell and defendant at the time of their arrest.
Officer McCord questioned defendant on the afternoon of May 10, 1985, after advising him of his Miranda rights. When asked if he knew about a murder, West replied that he knew "nothing about any murder and he didn't shoot anybody."
On July 17, 1985, in response to a message that West wanted to talk, McCord interviewed the defendant. The interview was taped, and the tape was admitted into evidence at West's murder trial. Also introduced at trial was a tape of the defendant's testimony at the trial of Donald Robertson.[3]
*480 At trial, the parties stipulated that the State would have called Lola King as a witness, but she had died since her initial reporting of the kidnapping. The parties also stipulated that both Gerrell and Robertson were convicted of first-degree murder in separate trials and were sentenced to life imprisonment.
JURY INSTRUCTIONS
A. Reasonable Doubt
In his first assignment of error, West contends that the jury instructions are confusing and misleading. His primary complaint is that the trial judge instructed the jury that reasonable doubt involves "a grave uncertainty" and lack of a "moral certainty", thereby misleading the jury to convict him under a lesser standard of proof. We disagree.
In State v. McDaniel, 410 So.2d 754 (La. 1982), the trial judge defined "reasonable doubt" as "a doubt that would rise to a great uncertainty" and "one that would make you feel morally uncertain as to the defendant's guilt." The court found that the phrase "great uncertainty" overstates the degree of uncertainty required for a reasonable doubt, and the phrase "morally uncertain" could be interpreted to mean that the uncertainty must be based on feeling, i.e., lack of moral indignation rather than a reasonable doubt about an essential fact.
The jury instruction in the instant case does not contain the offending language found in McDaniel, supra, and is easily distinguishable on this basis.[4]
*481 The entire instruction does, however, closely parallel the instructions given in both State v. Taylor, 410 So.2d 224 (La. 1982), and in State v. Miller, 489 So.2d 268 (La.App. 4 Cir.1986). Those instructions were upheld by the Louisiana Supreme Court and by this court. We find that the charge in the instant case fulfills the requirements of C.Cr.P. Art. 804[5] and, though the charge is lengthy, reasonable persons of ordinary intelligence would have no problem in understanding the definition of "reasonable doubt". See State v. Taylor, 410 So.2d 224 (La.1982).
This assignment of error lacks merit.
B. Charge on the Law of Principals
David West was indicted for first degree murder of Hardy and Jones. West contends that the jury charge on the law of principals relieved the state of the duty to prove that the defendant possessed the specific intent to kill or inflict great bodily harm required for a conviction of first degree murder.
First degree murder is the killing of a human being:
(1) When the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated kidnapping, aggravated escape, aggravated arson, aggravated rape, agravated burglary, armed robbery, or simple robbery;
(2) When the offender has a specific intent to kill or to inflict great bodily harm upon a fireman or peace officer engaged in the performance of his lawful duties;
(3) when the offender has a specific intent to kill or to inflict great bodily harm upon more than one person; or
(4) When the offender has specific intent to kill or to inflict great bodily harm and has offered, has been offered, has given, or has received anything of value for the killing.
For the purposes of Paragraph (2) herein, the term peace officer is defined to include any constable, marshal, deputy marshal, sheriff, deputy sheriff, local or state policeman, probation officer, judge, attorney general, assistant attorney general, attorney general's investigator, district attorney, assistant district attorney, or district attorney's investigator.
Whoever commits the crime of first degree murder shall be punished by death or life imprisonment at hard labor without benefit of parole, probation, or *482 suspension or sentence in accordance with the recommendation of the jury.
The due process clause of the fourteenth amendment requires that the state prove the existence of every element of a criminal offense beyond a reasonable doubt. In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Therefore, the state bore the burden of proving beyond a reasonable doubt that West possessed the requisite intent to kill or inflict great bodily harm, and that he was engaged in the perpetration or attempted perpetration of one of the nine felonies listed in R.S. 14:30.
In Flowers v. Blackburn, 779 F.2d 1115 (5th Cir.1986), the United States Fifth Circuit Court of Appeals held that the trial judge's instructions on the law of principals, when read in the context of the jury charge as a whole, violated the Fourteenth Amendment's requirement that the State prove every element of a criminal offense beyond a reasonable doubt. The charge in the instant case contains the Flowers charge in its entirety, as well as additional language.
Assignments of error predicated upon similar jury instructions, however, have been subjected by the Fifth Circuit to the harmless error test as pronounced in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). See Garland v. Maggio, 717 F.2d 199 (5th Cir.1983); Healy v. Maggio, 706 F.2d 698 (5th Cir.1983). Application of this harmless error analysis poses the question whether, given the record evidence, the state's release from its constitutional burden could have contributed to the verdict. Thus, if no rational juror could have concluded from the record evidence that the perpetrator of the crime lacked the requisite intent, the error is harmless. Garland v. Maggio, 717 F.2d at 203.[6]
We first approach this issue with the analysis used in Flowers v. Blackburn, 779 F.2d 1115 (5th Cir.1985)[7]. If we find the instructions erroneous, we will determine whether the error is harmless under Chapman v. California, supra.
The analysis applied in Flowers is as follows:
"First, the court must determine whether based on the specific language of the instruction the challenged instruction creates a constitutionally objectionable `mandatory presumption,' or `merely a permissive inference,' on an essential element of the crime. [Francis v.] Franklin [471 U.S. 307] 105 S.Ct. [1965] at 1971 [85 L.Ed.2d 344 (1985)] (citing Sandstrom [v. State of Montana ] 442 U.S. [510] at 514, 520-524, 99 S.Ct. [2450] at 2454, 2457-59 [61 L.Ed.2d 39 (1979) ]; Ulster County Court v. Allen, 442 U.S. 140, 157-63, 99 S.Ct. 2213, 2224-27, 60 L.Ed.2d 777 (1979)). Second, `[i]f a specific portion of the jury charge, considered in isolation, could reasonably have been understood as creating a presumption..., then the potential offending words must be considered in the context of the charge as a whole.' Franklin, 105 S.Ct. at 1971 (citing Cupp v. Naughten, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973))." 779 F.2d at 1120.
Applying the first prong, we find that the specific jury instructions might have relieved the State of the burden of proof of specific intent.
The trial judge correctly charged the jury under La.R.S. 14:30 that "[a]ll persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure *483 another to commit the crime, are principals."
However, the judge's further instructions to the jury that "persons knowing the unlawful intent of the person committing the crime ... are principals and equal offenders and subject to the same punishment" clearly relieved the State of the burden of proof on the critical question of state of mind. Flowers v. Blackburn, 779 F.2d 1115, 1121 (5th Cir.1986), citing Sandstrom v. Montana, 442 U.S. at 521, 99 S.Ct. at 2457. The Louisiana Supreme Court has stated that all principals are not automatically guilty of the same grade of offense, and in the case of a first degree murder conviction, it is not enough to find merely that the defendant's co-conspirator or accomplice had the necessary mental state, since this intent cannot be transferred to the accused. State v. Holmes, 388 So.2d 722, 726 (La.1980).
Under the second prong of the test, we consider the offending words in the context of the charge as a whole.[8] Though the instructions required that the jury find the killing was intentional in order to convict the defendant of first-degree murder, they failed to specify that this defendant (rather than Gerrell or Robertson) possessed the requisite intent in order to find this defendant guilty.
In addition to the initial charge, the jurors were twice more instructed on the law of principals, once after retiring to deliberate[9], and again, after four hours of deliberation. *484 At this point, the judge read the law of principals as set out in LSA-R.S. 14:24 and 25, explaining the difference between "being at the scene by accident," "being at the scene and doing nothing to encourage or aid in its commission," and being a principal.
The charge in the instant case contains the Flowers charge in its entirety. The Court in Flowers, supra, found that the charge read as a whole does not alleviate the error and, therefore, the jury charge violated Flowers' right to due process. Though the charge also contains additional language, this language does not appear to correct the presumption found objectionable in Flowers. The fact that the jurors twice asked for clarification points out their confusion on the law. At no point did the judge explain that West, personally, had to have had the specific intent to kill to be found guilty of first degree murder.
Because we conclude that the instructions were erroneous, we must now determine whether the error is harmless.
In Flowers there was almost no evidence of either specific intent or that the defendant was engaged in the perpetration or attempted perpetration of one of the nine felonies listed in LSA-R.S. 14:30. In the instant case, however, there was ample evidence of specific intent on the part of West.
West's testimony in State v. Robertson, 516 So.2d 180 (La.App. 4th Cir.1987) was introduced into evidence. At that trial, West testified that he drove the car to a remote spot while Gerrell followed in the car into which the victims had been forced. Jerry then forced the victims into the car that West had been driving and shot both victims. One fell into West's lap, splattering him with blood. West changed out of his blood-splattered pants while in the car. West then drove with Gerrell to a liquor store to meet Robertson. They all drove off and began discussing the killing. The police stopped them later and arrested them.
Though West admitted that he was present when the shootings took place, he claimed he knew nothing of Gerrell's intention to kill the men. However, for unknown reasons, West had an extra pair of slacks with him, into which he changed after his blue jeans became splattered with blood. He was with Gerrell while the victims were bound and gagged and remained in his company for sometime after the two victims were shot, driving to a bar to meet Robertson and then driving around to discuss the killings. The gun was still in the car when West was stopped. There was also blood in the car in several places. Furthermore, there was no indication that these actions were involuntary.
The jury charge regarding principals might have led a reasonable juror to believe that specific intent was required only of one of the three men involved. However, the evidence that West actively acquiesced in the use of deadly force was such that no rational juror could have concluded that he lacked the requisite intent for the crime in question.[10]See State v. Brooks, 505 So.2d 714 (La.1987). We conclude, therefore, that any error in the jury charge was harmless.
INSUFFICIENCY OF THE EVIDENCE
West argues that the evidence was insufficient to support a conviction of first degree murder. The standard to be applied in reviewing the sufficiency of evidence as enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt the essential elements of the crime. State v. Vaccaro, 411 So.2d 415 (La.1982).
As the facts discussed above illustrate, there was substantial evidence from which *485 the jury could have concluded that the state met its burden of proving beyond a reasonable doubt each element of the crime.
For the reasons discussed herein, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] Washington later identified the "big guy" from a photographic lineup as Gerald Gerrell. She also identified David West, whom she had known for several years.
[2] Two rings belonging to Curtis Hardy were found in Donald Ray Robertson's property in Central Lock-Up.
[3] This court summarized West's testimony in State v. Robertson, 516 So.2d 180, 182 (La.App. 4th Cir.1987):

According to West, it was Gerald Jerry [sic] who kidnapped the victims and shot them in the car in which they were found. West was told by Jerry to drive the car to a remote spot while Jerry followed in his car. Jerry then forced the victims into the car that West had been driving and shot both victims. One fell into West's lap, splattering him with blood. West changed from blue jeans to slacks while in the car. West and Jerry then drove to a liquor store where the defendant [Robertson] was. West got out of the car and told the defendant that Jerry was threatening to kill the defendant and his family. They all drove off and began discussing the killing. The police stopped them later and arrested them. West acknowledged that blood had gotten on the defendant's clothes, but according to West, this was done after the killing, while the defendant rode in Jerry's car.
West also testified that Jerry killed the victims because they would not say where cocaine was located. West further testified that he had seen the defendant selling drugs to the victims three days before the murder. In these statements the defendant admitted that he was present when the shootings took place. However, he claimed that Robertson was not present. He stated that Gerrell was the one who shot the victims and claimed he knew nothing of Gerrell's intention to kill the men.
[4] The trial judge instructed the jury on the issue of reasonable doubt as follows:

"Ladies and gentlemen of the jury, the accused at the bar is presumed to be innocent until he is proven guilty beyond a reasonable doubt. The consequence of this rule of law is that he is not required to prove his innocence, but may rest upon the presumption in his favor until it is overthrown by positive affirmative proof. The burden, therefore, is upon the state to establish, to your satisfaction and beyond a reasonable doubt, the guilt of the accused as to the crime charged in the indictment or any lesser one included in it.
"Now when I talk about responsive verdicts or lesser included verdicts, I'm talking about these two in-between verdicts, which would be, guilty of second degree murder and guilty of manslaughter. Those are the responsive verdicts. The greater verdict is what's known as guilty as charged, which would be guilty of first degree murder, and, of course, the other possible verdict is not guilty.
"So should you entertain a reasonable doubt as to the grade of the offense committed, then it would be your duty to find the defendant guilty only of that grade of which you are convinced beyond a reasonable doubt of which he is guilty.
"Now, if you entertain a reasonable doubt as to any fact or element indispensably necessary to constitute the defendant's guilt, then it is your sworn duty to give him the benefit of that doubt to return a verdict of acquittal. And even where the evidence demonstrates a probability of guilt, yet, if it does not establish it beyond a reasonable doubt, you must acquit the defendant.
"Now, while the state must prove guilt beyond a reasonable doubt, it does not have to prove guilt beyond all possible doubt. Reasonable doubt is doubt based on reason and common sense and is present when, after you have carefully considered all of the evidence, you cannot say that you are firmly convinced of the proof of the charge.
"A reasonable doubt must be just that. This doubt must be a reasonable one; that is one that is founded upon a real, tangible, substantial basis and not upon mere caprice, fancy or conjecture. It must be such a doubt as would give rise to an uncertainty raised in your minds by reason of the unsatisfactory character of the evidence.
"A reasonable doubt is not a mere possible doubt; it's an actual or substantial doubt. It's such a doubt as a reasonable person would seriously entertain. It's a serious doubt; a doubt for which you can give a good reason.
"Now, if after giving a fair and impartial consideration to all of the facts in the case, you find the evidence is unsatisfactory or lacking upon any one single point indispensably necessary to constitute the defendant's guilt, this would give rise to a reasonable doubt such as would justify you in rendering a verdict of not guilty.
"Further, you must not resort to extraneous facts or circumstances in reaching you verdict, and you are not at liberty to adopt unreasonable theories or suppositions in considering the evidence in order to justify a verdict of conviction.
"You are to be governed by the evidence or the lack of it and the law as heard by you in this court, and, if upon this you find the accused guilty beyond a reasonable doubt, your duty is to so announce by your verdict. On the other hand, if a reasonable view of the evidence shows that the defendant is not guilty, then you should acquit him."
[5] C.Cr.P. Art. 804 provides in relevant part:

A. In all cases the court shall charge the jury that:
(1) A person accused of crime is presumed by law to be innocent until each element of the crime, necessary to constitute his guilt, is proven beyond a reasonable doubt;
(2) It is the duty of the jury, in considering the evidence and in applying to that evidence the law as given by the court, to give the defendant the benefit of every reasonable doubt arising out of the evidence or lack of evidence in the case; and
(3) It is the duty of the jury if not convinced of the guilt of a defendant beyond a reasonable doubt, to find him not guilty.
The court may, but is not required to define "the presumption of innocence" or "reasonable doubt" or give any other further charge upon the the same than that contained in this article.
[6] In Garland v. Maggio, 717 F.2d 199 (1983), the trial judge instructed the jury that "a person is presumed to intend that natural and probable consequences of his acts."
[7] In Flowers, the defendant was charged with first degree murder of an elderly woman who had been killed by at least one intruder in her house. The defendant made a statement, admitting taking part in the burglary, but claiming that a confederate, Grant, had killed the victim. The United States Fifth Circuit held that the jury instructions at the guilt/innocence phase of the trail could have improperly allowed the jury to find the defendant guilty of first degree murder without finding that he had a specific intent to kill.
[8] The trial judge instructed the jurors on the law of principals as follows:

"Next, ladies and gentlemen of the jury, the Court will charge you as to the law as it pertains to principals. All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals. In other words, ladies and gentlemen, to be concerned in the commission of a crime, it must be shown that the person or persons charged did something knowingly and intentionally in furtherance of a common design; or to put it another way, that he or "they aided, abetted and assisted in the perpetration of the offense.
"All persons, knowing the unlawful intent of the person committing the crime, who were present, consenting thereto, and aiding and abetting, either by furnishing the weapons of attack, encouraging by words or gestures, or endeavoring at the time of the commission of the offense to secure the safety or concealment of the offender, are principals and are equal offenders and are subject to the same punishment.
"To render one guilty as a principal, he must have either committed the offense himself or in some way participated in the commission of the crime, or he must have aided, assisted or abetted the actual perpetrator of the deed before it might be said that he was concerned in the commission of the crime.
"Mere presence at the time the offense is committed, without any intention to participate or in any way to contribute to its commission, is not sufficient to make one a principal. The mental approval or sympathy with the perpetrator of the crime or with the act done or acquiescence in its commission or failure to maintain effort to prevent its commission or to apprehend the offender is not sufficient to make one a principal
"Thus, one whom by accident is present when a crime is committed, but who does nothing to aid, encourage or abet in its commission, cannot be said to be a principal, unless he be present and acting in concert with the actual perpetrator of the offense for the purpose of assisting, if necessary, or of watching and preventing interference or detection or for the purposes of lending encouragement to the perpetrator or to the commission of the offense itself.
"Where a joint enterprise is sought to be shown or it's the theory of the state that parties jointly aided, assisted and abetted each other in the commission of the offense charged, it is not necessary that the state show the formal concert of action or that a conspiracy was entered into between the parties. It is only necessary that the jury be convinced beyond a reasonable doubt by all the evidence adduced that the parties did act in concert and together in the consummation of the criminal enterprise, and that their acts were knowingly and intentionally performed in the furtherance of a common purpose or design.
[9] The judge explained to the jury:

"Well, under our law, ladies and gentlemen, to be concerned in the commission of a crime or to be involved in a commission of a crime, one must either commit the crime themselves or aid and abet the commission.
"Now in our law in Louisiana, there are two characters of actors in crimes: The first is known as principals and the others are what are known as accessories or accessories after the fact. We are not concerned here today with accessories after the fact.
"In order to be a principal to the crime, one must either commit the act themselves or actively participate, aid and abet in the commission of the crime itself.
"Now if you want me to give the whole definition of principals again, I can, but that's generally it. Does that help you on that?"
[10] We note that West did not receive the maximum sentence allowable for first degree murder, but instead received the same sentence that would have been imposed had he been found guilty only of second degree murder.