WICKER, Judge.
Demetra Harvey, the defendant,’ was charged by bill of information with violation of La.R.S. 14:93 (cruelty to a juvenile) in that she did allow, aide, abet and/or procure in the infliction of beatings about the buttocks, head, legs, back, chest and body of Kierra Dukes. Dukes, a 20-month old infant, died February 15, 1991. The co-defendant, Lawrence Williams, also died; thus, his name was deleted from the bill of information. After a jury trial Harvey was convicted as charged. She was sentenced to seven years at hard labor. We affirm.
On appeal defendant assigns the following errors:
*716 1. The trial court committed reversible error when the court did not follow the standards of Batson v. Kentucky in making the decision to deny appellant’s motion to dismiss the jury.
a. The prosecutor’s peremptory challenges against potential black jurors resulting in a black defendant being tried by an all white jury amounts to a prima facie showing of discrimination under Batson.
b. The prosecutor did not provide legitimate, specific, trial-related reasons for striking the black veniremen, and the trial judge applied the incorrect standard when he did not assess the weight and credibility of the prosecutor’s proferred reasons.
2. The trial court erred in denying the request for special jury charge by defendant.
a. The jury charge given by the court is inadequate as it denies the appellant the full purview of the law of principals.
The state argues that the defendant waived all objections to the composition of the jury by waiting to object until after the jury was impaneled and sworn. See State v. Williams, 524 So.2d 746 (La.1988). Irrespective of whether the objection was timely made we find no merit to defendant’s Batson challenge for the reasons stated.
The defendant contends in brief that the state systematically excluded two potential jurors solely on the basis of race in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). See also La.C.Cr.P. art. 795. She also asserts the reasons given by the state were not legitimate, specific nor trial-related. Furthermore, she argues the trial judge used the wrong standard of review.
In State v. Collier, 553 So.2d 815, 818-819 (La.1989) the Louisiana Supreme Court explained Batson as follows:
Under Batson the defendant, after timely objection, must demonstrate a pri-ma facie case of purposeful discrimination. To do so, the defendant must establish that he is a member of a cognizable racial group, that the prosecutor has exercised his peremptory challenges to remove other members of that race from the jury, and that these facts, along with the other relevant circumstances, raise an inference that the prosecutor used his peremptory challenges to exclude the veniremen from the jury on account of their race. Id. at 96, 106 S.Ct. at 1722.
The trial judge must determine whether the defendant has established the requisite prima facie case. In making this determination, the trial judge should consider all relevant circumstances, including any pattern of strikes by the prosecutor against black jurors and any questions or statements by the prosecutor during voir dire examination or in exercising his challenges which may support or refute an inference of purposeful discrimination. Id. at 96-97, 106 S.Ct. at 1722-1723. [footnote omitted].
The jury was all white. The defendant in this case is a black female and the state used three peremptory challenges against black females. The trial judge in the instant case evidently found that a prima facie case had been met for discrimination since he allowed the state to proceed with its reasons for challenges of black jurors.
However, even assuming there had been a prima facie showing of purposeful discrimination we conclude the trial judge correctly found no merit to the Batson claim following the rebuttal of the state.
As Collier explained at 820:
Once the defendant makes a prima fa-cie showing of purposeful discrimination, Batson shifts the burden to the prosecutor to come forward with a neutral explanation for challenging the black jurors. This explanation may be something less than justification of a challenge for cause, but must be something more than the prosecutor’s assumption or intuition that the juror will be partial to the defendant because of their shared race. Neither may the prosecutor merely assert good faith or deny discriminatory motive. The neutral explanation must be one which is clear, reasonably specific, legitimate and related to the particular case *717 at bar. Id. 476 U.S. at 97-98, 106 S.Ct. at 1723; Belcuore, Restricting Racially Motivated Peremptory Challenges, 24 Fed.B.J. 39 (Jan. 1987).
After the prosecutor has presented reasons for his use of a peremptory challenge which on their face are racially neutral, an issue of fact is joined, and the trial court must assess the weight and credibility of the explanation in order to determine whether there was purposeful discrimination in the use of the challenge. Tomkins v. Texas, 774 S.W.2d 195, 202 (Tx.Crim.App.1987), aff'd. without opinion by an equally divided court, 490 U.S. 754, 109 S.Ct. 2180, 104 L.Ed.2d 834 (1989); Batson, 476 U.S. at 98, 106 S.Ct. at 1723.
Defendant contends the state’s reasons for challenging Deborah Carter and Kim Kaywood were not accurate. She argues that although the explanations given may he neutral on their face an assessment of the weight and credibility shows otherwise.
In response to the Batson challenge, the state provided the following reasons:
our reasons for challenging Mrs. Carter are abundantly clear on the record. This woman stated she would have a great deal of difficulty understanding what was going on in these proceedings. She kept stating over and over again this was all new to her, she didn’t understand; she wasn’t sure about this, she wasn’t sure about that, and she stated at one point during the questioning, quite clearly, she felt she would have trouble rendering a guilty verdict.
She appeared very apprehensive about coming back into open court and stating in front of the Defendant that she had voted guilty. In fact, at one time, I believe she asked the question: “Will the Defendant be here? Is she going to be sitting there when I come back with the jury verdict?”
Having expressed that concern, the State felt that it was proper to exercise a peremptory challenge on Mrs. Carter.
With regard to Ms. Kaywood, the last juror mentioned by Mr. O’Neill, she was asked a number of questions along the lines whether or not she saw a difference between abuse and discipline, and at one point, in response to a question regarding whether it was all right to beat a child with a belt or not, she said it was okay, as long as they weren’t too long.
Having expressed an opinion it is all right to beat a child with a belt, the State felt it was important in this case to thank and excuse Ms. Kaywood.
She was also contradictory to some of the questions we asked along that same line, with regard to discipline. At one point, she would try — she said, “I would discipline more than spank or more than beat,” but even though she said she was disciplining, rather than beating, she admitted she would beat a child with a belt.
The State felt that was sufficient basis to challenge Ms. Kaywood.
Carter was specifically asked questions by the trial judge regarding whether she could follow the law. Her answers were often qualified. The trial judge asked:
If the state has proven everything that they have to prove to your satisfaction, beyond a reasonable doubt, based on the law that you’ve heard and following the law I gave to you, can you find the defendant guilty?
Carter replied:
this is something new to me ... It is a whole new thing. I would rather listen and pay attention.
When the trial judge restated the question she stated, “If they are wrong, I could.” However, she also stated she would “have to see” if she could find the defendant not guilty. When questioned again by the trial judge on this point she stated, “I have to see the witnesses, because it is new to me.”
Kaywood stated she agreed with the philosophy of discipline allowing the beating of a child with a belt on a place where it left marks. When asked whether it was permissible to beat a child with a belt, she replied, “Yes, but not my little girl.”
We find no merit to this assignment of error.
*718 Defendant also argues the trial judge erred by not giving the following requested special jury charge defining “principal” as per State v. West, 552 So.2d 478, 483 at n. 8 (La.App. 4th Cir.1989):
, To render one guilty as a principal, he must have either committed the offense himself or in some way participated in the commission of the crime, or he must have aided, assisted or abetted the actual perpetrator of the deed before it might be said that he was concerned in the commission of the crime.
“Mere presence at the time of the offense is committed, without any intention to participate or in any way to contribute to its commission, is not sufficient to make one a principal. The mental approval or sympathy with the perpetrator of the crime or with the act done or acquiescence in its commission or failure to maintain effort to prevent its commission or to apprehend the offender is not sufficient to make a principal.
“Thus, one whom by accident is present when a crime is committed, but does nothing to aid, encourage or abet in its commission, cannot be said to be a principal, unless he be present and acting in concert with the actual perpetrator of the offense for the purpose of assisting, if necessary, or of watching and preventing interference or detection or for the purposes of lending encouragement to the perpetrator or to the commission of the offense itself.”
She argues the following charge given by the trial judge did not fully explain the law:
all persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
In the instant case the trial judge’s instruction was the exact language contained in La.R.S. 14:24 which defines “principal”.
The Fourth Circuit case of State v. West, 552 So.2d 478 (La.App. 4th Cir.1989) upon which the defendant relies has been reversed by the Louisiana Supreme Court in State v. West, 568 So.2d 1019 (La.1990). The Supreme Court found the charge to be erroneous and to constitute reversible error because it relieved the state of proving specific intent required in first degree murder.
The West charge contained the following language:
All persons, knowing the unlawful intent of the person committing the crime, who were present, consenting thereto, and aiding and abetting, either by furnishing the weapons of attack, encouraging by words or gestures, or endeavoring at the time of the commission of the offense to secure the safety or concealment of the offender, are principals, and are equal offenders and are subject to the same punishment.
568 So.2d 1019, 1021 n. 2.
The defendant was charged with cruelty to juveniles pursuant to La.R.S. 14:93 which states that: (A) “Cruelty to juveniles is the intentional or criminally negligent mistreatment or neglect, by anyone over the age of seventeen_” [Emphasis added.]
La.R.S. 14:8 provides:
Criminal conduct consists of:
(1) An act or failure to act that produces criminal consequences, and which is combined with criminal intent; or
(2) A mere act or failure to act that produces criminal consequences, where there is no requirement of criminal intent; or
(3) Criminal negligence that produces criminal consequences.
La.R.S. 14:10 provides:
Criminal intent may be specific or general:
(1) Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.
(2) General criminal intent is present whenever there is specific intent, and also when the circumstances indicate *719 that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act.
La.R.S. 14:11 provides:
The definitions of some crimes requires a specific criminal intent, while in other no intent is required. Some crimes consist merely of criminal negligence that produce criminal consequences. However, in the absence of qualifying provisions, the terms “intent” and “intentional” have reference to “general criminal intent.” [emphasis added]
La.R.S. 14:12 provides:
Criminal negligence exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender’s conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under the circumstances.
In light of the above-cited articles, it can be seen that, pursuant to article 14:93, defendant could be found guilty with or without criminal intent, e.g., “intentionally” or “criminally negligent.” The instructions given by the trial judge were correct.
The requested charge is an enlargement of La.R.S. 14:24 and its essence is included in the charge given. We conclude this assignment lacks merit.
Accordingly, for the reasons stated the conviction and sentence are affirmed.
AFFIRMED.
KLIEBERT, J., concurs in result.