NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

**22-798**

STATE OF LOUISIANA

VERSUS

KENDARIUS DEWAYNE SEWELL
A/K/A KENDARIUS SEWELL

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 347,244
HONORABLE MARY DOGGETT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**GUY E. BRADBERRY
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, Van H. Kyzar, and Guy E. Bradberry, Judges.

**AFFIRMED AS AMENDED; REMANDED WITH INSTRUCTIONS.**

**Jeff Landry**
**Attorney General**
**Christopher N. Walters**
**Grant L. Willis**
**Assistants Attorney General**
**P.O. Box 94005**
**Baton Rouge, LA 70804**
**(225) 326-6276**
**COUNSEL FOR:**
    **State of Louisiana**

**Chad M. Ikerd**
**Louisiana Appellate Project**
**P. O. Box 2125**
**Lafayette, LA 70502**
**(225) 806-2930**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Kendarius Dewayne Sewell**

**Kendarius Dewayne Sewell**
**Rapides Parish Detention Center #3**
**7400 Academy Drive**
**Alexandria, La 71303**

**BRADBERRY, Judge.**

Defendant, Kendarius Dewayne Sewell, was originally charged by bill of information with three counts of pornography involving juveniles under the age of thirteen years, in violation of La.R.S. 14:81(A)(1), E(1)(a), and E(5)(a). Subsequently, two amended bills were filed with the final charges being three counts of pornography involving juveniles under the age of thirteen and three counts of pornography involving juveniles under the age of seventeen. By a unanimous vote, a jury convicted Defendant of the charged offenses. For each conviction involving juveniles under the age of thirteen, Defendant was sentenced to ten years at hard labor without the benefit of parole, probation, or suspension of sentence. For each conviction involving juveniles under the age of seventeen, Defendant was sentenced to serve five years at hard labor without the benefit of parole, probation, or suspension of sentence, all sentences to run concurrently with credit for time served. Defendant was required to register as a sex offender for twenty-five years. Defendant is before this court appealing his convictions.

## FACTS

At trial, Supervisory Special Agent Randall Gohn, Sr., of the Attorney General's Office, Louisiana Bureau of Investigation, testified he works in the cybercrime unit dealing mostly with child sex exploitation. The majority of his cases have been based on National Center for Missing and Exploited Children (NCMEC) cyber tip referrals. In this case, NCMEC was advised that child sexual exploitation material (child pornography) had been transmitted or sent from an account to an unknown person via Instagram and Twitter. When it is believed that child pornography is being trafficked through Twitter and Instagram, the abuse material along with the subscriber information (username or email address) is sent

to NCMEC. Also sent is the internet protocol address (IP address) associated with the account, whether that be the IP address used to upload the material or the IP address used to log into the account. When NCMEC obtained the information in this case, they forwarded the information to the Louisiana Internet Crime Against Children Task Force. Agent Gohn reviewed the actual images/videos that were received, and he testified that there were quite a few videos and images of "prepubescent children engaging in sexual acts or lewdly displaying their vaginal or anal regions." He issued a subpoena to Suddenlink Communications providing the pertinent IP address and exact time that he was told the account was used to upload or transmit the material. In response, he received documentation revealing that the customer was Defendant, and the residential address was provided.

Agent Gohn testified that he applied for and obtained a search warrant for the residence. When the search was executed on the morning of January 9, 2020, Defendant and his father were home. Defendant agreed to speak with Agent Gohn. About two minutes and thirty seconds into their talk, Defendant was *Mirandized* out of an abundance of caution, and no promises or threats were made. Defendant provided the password for his phone prior to, and then again after, being *Mirandized*.[1] According to Agent Gohn, Defendant, who was up, wide awake, and had showered, was very polite to deal with the entire time. He did not appear to be under the influence of drugs or alcohol, appeared to be under no duress or stress, and he understood why law enforcement was there. While the search was being executed in the house, Agent Gohn and Special Agent Scott Woodrow of the Department of Homeland Security spoke to Defendant in the back of their van for

---

[1] The trial court denied a motion to suppress the giving of the password prior to Defendant's *Miranda* rights being given because at the point that the information was given, Defendant was not subject to custodial interrogation.

about forty minutes. This was done because it was cold outside, and the residence was small. The interview was recorded, although this was not known to Defendant at the time. At the point the agents spoke to Defendant, he was not under arrest because they did not know he was the suspect; the only thing known was that the IP address was registered to the residence. The agents did not know who was using the internet service.

The recording of Defendant's interview was played for the jury. In it, Defendant said he had three cell phones, one which worked, and two older ones that did not. He provided agents the password to his working phone. Agents told him he was not under arrest. They read him his *Miranda* rights, and shortly thereafter, Defendant again provided the password to his cell phone. Defendant said he dropped out of school in ninth grade. He said he did not drink or smoke, so he was not under the influence of anything. He had never been arrested. He admitted he had Mega, an encrypted cloud storage app, and Dropbox on his phone, and he used them a month or two ago. He had Instagram and Facebook and had Twitter in the past. He admitted to looking at porn, stating he got it from Pornhub.com and X videos. He said he saw young porn on Twitter "a while back" and on Tumblr. He was asked how "young" the porn was, and he said he had no idea. He said he could have seen child porn a couple of days ago, but he was not entirely sure; if he saw it, it had to be on Twitter. He confirmed that he viewed all child porn on his phone, and he may have saved it by accident not knowing it was child porn. He was then asked if he ever saved child porn anywhere and he said, "I'm just going to say yes." When asked where this would be, he said it would probably be videos in his phone gallery. He had no idea how many, but he guessed about ten. The last time he viewed child porn was "maybe" in the last month, and

then when asked to respond yes or no, he said, "Let's just say yes. Apparently y'all have more information than I do." The agents explained that they had a lot of information, but not all, and Defendant stated that was why they were asking questions.

Defendant said he was getting child porn from Twitter, and he provided the agents his "handle." He provided passwords to his other two phones but stated he had no child porn on those, only Hentai (a term he used in the interview which he explained was animated porn) and Anime. He said he had downloaded a bunch of old "vines" on his phone, and he was not sure if it was child porn or not. Agents asked whether he saw child porn when he downloaded, and he said it was hard to tell because there were no faces, but he confirmed there were vaginas and undeveloped prepubescent boobs shown. Defendant said he also used Telegram, an app from which he could send "stuff," and it automatically downloaded to his phone. He confirmed that his father did not know he was doing this, and no one else used Defendant's phone. Defendant admitted he had been looking at child porn for a while, adding he may have a problem with it. He said he did not masturbate to child porn, only to Hentai or regular porn. Defendant stated he talked to the guys he traded child porn with online only through his cell phone. When Agents asked why he looked at child porn, Defendant said he did not know. They asked what excited him about it, and he said, "nothing in particular . . . just download it I guess." He said, "I'm not sure what I'm turned on by. Guess I must be turned on by something because I keep looking at it. Maybe it's addiction?" When asked if he thought he was addicted, he said, "not particularly, but I see how it can be viewed as that." Agents asked what other sites he was getting child porn from, and Defendant said Telegram, Tumblr (although Tumblr had removed

everything), and Pornhub. When asked how old the children were, Defendant first said, "no clue," then when asked roughly how old, he said "thirteen, seventeen." Agents asked where he was getting his "young young young" pre-teen child porn with no breast development or pubic hair. He responded that he had downloaded some Megas, and Mega was where he obtained it. He said some were on his SD card, and they came in folders. When asked how much child pornography he thought he had in his Mega, Defendant said, "a good bit," and he had not looked at it. He explained that he imported it when people online sent him a link through Telegram. Agents asked what ages he searched when trying to find child porn, and Defendant explained that he did not use search terms. He just used Mega which had some of all ages, typically listed by name or a date.

Defendant confirmed that the internet account at the home was in his name, and his father gave him the money to pay for it. He said his cell phone was the only electronic device in the house that officers would find child porn on.

After the interview was played in court, Agent Gohn confirmed that during his interview of Defendant, there was a buzzing noise in the background which was a generator on the van that provided heat. He explained that a Mega account (referred to extensively in the interview) is based overseas and is encrypted. When material is uploaded to Mega, it has a password so that only the user can access it. On cross-examination, he explained that Mega is a website and an online cloud storage location. A person must create an account to download from it, and the only way to know the material is encrypted is to read the end user license agreement. Agent Gohn confirmed that to obtain information from Mega, a person must log in, download something, and click on it; it was not automatic.

Defendant's phone was taken during the execution of the search warrant. Agent Gohn performed the search of the phone and found approximately one hundred "[e]xtremely young child pornography videos that are, in my plus 20 years of experience, extremely egregious and graphic including sadomasochistic." Six of the one hundred formed the basis for the charges in this case and were shown to the jury; according to Agent Gohn, these six videos were representative of the others. The images obtained from Defendant's phone were obtained from the folders on the SD card.

According to Agent Gohn, there were three different NCMEC tips in this case, and one of them contained approximately ninety videos. On cross-examination, Agent Gohn confirmed that he was unable to determine with any specificity the names or birth dates of the children in the videos.

On redirect examination, Agent Gohn confirmed that Defendant was twenty-one years old on January 9, 2020, the date he was interviewed. During the interview, Defendant told Agent Gohn that he got child pornography on his own from four different sources, Pornhub, Twitter, Instagram, and Mega. On recross examination, Agent Gohn confirmed that he checked Defendant's phone via "digital forensics" for irregularities or software (sometimes unknown to the owner/user) that would indicate evidence of manipulation by outside sources, i.e., hacking; there were none.

Michael Sewell, Defendant's father, testified that he had lived at his home for thirty years, and only he and Defendant lived there at the time of the search. Other people would occasionally stop by and sometimes stay a night.

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find one error patent. Additionally, we note the minutes of sentencing are in need of correction.

We find the trial court exceeded its authority when it stated that Defendant was "being sentenced under 15:537." This court has stated the following regarding the trial court's authority to sentence a defendant pursuant to La.R.S. 15:537:

> We first address whether the trial court "denied" diminution of sentence. Such a denial by the trial court would constitute error as the supreme court has held that the provisions of La.R.S. 15:537(A), which prohibits diminution of sentence for certain sex offenders, and the provisions of La.R.S. 15:571.3, which sets forth the guidelines for diminution of sentence for all prisoners, do not form part of the sentence. *State v. Prejean*, 08-1192 (La. 2/6/09), 999 So.2d 1135 (per curiam). The guidelines are instead directives to the Department of Corrections in computing an inmate's sentence. *Id.* *See also State v. Fallon*, 15-1116, p. 4 (La.App. 3 Cir. 4/6/16), 189 So.3d 605. Both the supreme court and this court have repeatedly stated that trial judges lack authority to deny diminution of sentence. *See State v. Narcisse*, 97-3161 (La. 6/26/98), 714 So.2d 698; *Fallon*, 189 So.3d 605. In cases in which the trial court has been found to deny diminution sentence [sic], this court has corrected the sentencing error. *See, e.g., State v. Davis*, 19-562 (La.App. 3 Cir 2/5/20), 291 So.3d 246, *writ granted on other grounds*, 20-392 (La. 6/3/20), 296 So.3d 1041; *Fallon*, 189 So.3d 605.

*State v. Monceaux*, 22-28, p. 6 (La.App. 3 Cir. 6/1/22), 340 So.3d 201, 206.

In the present case, the State asked the trial court to "take judicial notice and make a record that . . . the sentence . . . is also pursuant to Revised Statute 15:537 which does not permit good time for a sentence for pornography involving juveniles." Apparently reading from La.R.S. 15:537, the trial court stated: "If a person is convicted of 14:81.1 pornography involving juveniles and is sentenced to imprisonment for a stated number of years and months, the person shall not be

7

eligible for dimunition [sic] of sentence or good time. So we'll let the record reflect that he's being sentenced under 15:537."

The State thanked the trial judge and stated "[t]hat should be included on the committal – your reference to that statute." Although we do not find any reference to good time on the Uniform Commitment Order, the minutes of sentencing state that the sentences were imposed "without good time."

In *Monceaux*, 340 So.3d at 207, this court found the trial court's statement regarding good time was merely an advisement that did not need correction. The trial court in *Monceaux* stated the following at sentencing:

> Under 15:571.3, is the defendant subject to diminution for good behavior[?]
>
> It's the Court's position he is not.

*Id.* at 206 (alteration in original).

In *State v. Broussard*, 22-507 (La.App. 3 Cir. 11/30/22), 354 So.3d 167, this court distinguished *Monceaux* and found Broussard's sentence needed correction. In *Broussard*, the trial court stated the following at sentencing:

> Your sentence is not entitled to diminution for good behavior, under the provisions of 15:537, because you stand convicted of a violation of Subpart A(1) of Part 5 of Title 1 of - - I'm sorry - - of Chapter 1 of Title 14 - - namely, molestation of a juvenile.

*Id.* at 168.

The court in *Broussard*, 354 So.3d at 169-71 (alterations in original), discussed cases wherein this court found the trial courts' statements regarding diminution of sentence were merely advisements and cases where this court found the trial courts' statements were improper denials of diminution of sentence:

> As recently explained in *State v. Monceaux*, 22-28, p. 6 (La.App. 3 Cir. 6/1/22), 340 So.3d 201, 206, this court is often called

8

upon to determine whether a trial court's statement constituted an actual denial of diminution of sentence or whether it was merely an advisement:

. . . .

Finding the statement was merely an advisement, this court in *Monceaux* stated:

> We conclude the trial court's reference to diminution of sentence in the present matter was likewise merely an advisement and, therefore, not an error requiring correction. Namely, the trial court's passing reference, including its offering of its "position," differentiates this matter from one in which a trial court's reference to diminution of sentence was found to be a denial of that benefit. *See, e.g., Davis*, 291 So.3d at 251 (wherein the trial court definitively stated: "You are not entitled to diminution for good behavior."). Moreover, in *Davis*, the minutes of sentencing indicated that Defendant was not entitled to diminution for good behavior. *Id.* In contrast, the minutes of the sentencing in the present case are silent as to diminution.

*Id.* at 207.

In *State v. Samuel*, 19-408, p. 9 (La.App. 3 Cir. 2/5/20), 291 So.3d 256, 262-63, *writ denied*, 20-398 (La. 7/24/20), 299 So.3d 77, this court also found the trial court's statement was merely an advisement:

> At sentencing, the trial court stated the following regarding diminution of sentence:
>
>> [T]he law tells me I have to sentence you under [La.R.S.] 14:42[(B) 2] and through C(b) (sic) to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence; this is a crime of violence and a sex offense and is not subject to diminution for good behavior; it is not an enhanced sentence[.]
>
> The trial court's statement that the sentence is not subject to diminution could be interpreted as a denial of diminution of sentence by the trial court. In *State v. Burton*, 18-935, p. 2 (La.App. 3 Cir. 6/5/19), 274 So.3d 122, 126-27, this court held:

9

> Although La.Code Crim.P. art. 894.1(D) previously required the trial court to advise a defendant of whether his sentence was subject to diminution for good behavior, the article was amended in 2010 to delete that requirement. 2010 La. Acts. No. 350, § 1; *See also State v. D.G.H.*, 07-524 (La.App. 3 Cir. 10/31/07), 969 So.2d 1254. Thus, at the time the trial court imposed the present sentences, La.Code Crim.P. art. 894.1(D) no longer required such an advisement. Prior to the amendment this court distinguished between an advisement and an actual denial of diminution of sentence, finding no corrective action was needed if the trial court merely advised a defendant that his sentence was not subject to diminution. *State v. James*, 09-606, p. 3 (La.App. 3 Cir. 12/9/09), 26 So.3d 915, 917.

> We interpret the trial court's statement simply as an advisement that Defendant's sentence was not subject to diminution and not as a denial by the trial court of diminution of sentence. We further note that the trial court is no longer required to "advise" a defendant as to whether his sentence is subject to diminution. La.Code Crim.P. art. 894.1(D).

*See also State v. Watson*, 21-725, p. 7 (La.App. 3 Cir. 4/27/22), 338 So.3d 95, 100, where this court found the trial court's statement "[t]hese sentences are crimes of violence and are not subject to diminution for good behavior" was merely advisory.

In *State v. Davis*, 19-562, pp. 8-10 (La.App. 3 Cir 2/5/20), 291 So.3d 246, 251-52, *writ granted on other grounds*, 20-392 (La. 6/3/20), 296 So.3d 1041, *reversed and remanded on other grounds*, 19-562 (La.App. 3 Cir. 7/29/20), 304 So.3d 559 (footnote omitted), this court treated the trial court's statement as an actual denial of diminution of sentence:

> After stating the number of years imposed for Defendant's sentence, the trial court informed Defendant that upon his release, he would be required to register as a sex offender for the remainder of his life and that he would be required to be electronically monitored in accordance with La.R.S. 14:43.1(C)(4). The trial court then stated:

Mr. Davis, your sentence has not been enhanced pursuant to the provisions of the Habitual Offender Act, nor has it been enhanced because there was no evidence of any use of firearm. You are not entitled to diminution for good behavior.

The minutes of sentencing also state that Defendant is not entitled to diminution for good behavior.

. . . .

Although we could find that the trial court's statement was merely an advisement, we will proceed as if it was an actual denial of diminution of sentence. The trial court was no longer required by La.Code Crim.P. art. 894.1(D) to advise Defendant of whether his sentence was subject to diminution of sentence. Thus, the trial court's statement regarding diminution of sentence could be regarded as an actual denial of diminution of sentence. *See State v. Burton*, 18-935 (La.App. 3 Cir. 6/5/19), 274 So.3d 122, where this court found a similar statement by the trial court was an actual denial of diminution of sentence rather than a mere advisement.

Accordingly, Defendant's sentence should be amended to delete such statement, as the trial court was not authorized to deny diminution of sentence. The supreme court has held that the provisions of La.R.S. 15:537(A), which prohibits diminution of sentence for certain sex offenders, and the provisions of La.R.S. 15:571.3, which sets forth the guidelines for diminution of sentence for all prisoners, do not form part of the sentence but are directives to the Department of Corrections in computing an inmate's sentence. *State v. Prejean*, 08-1192 (La. 2/6/09), 999 So.2d 1135 (per curiam). *See also State v. Fallon*, 15-1116 (La.App. 3 Cir. 4/6/16), 189 So.3d 605. "This court and the supreme court have repeatedly stated that trial judges lack authority to deny good time eligibility." *State v. Toups*, 17-792, p. 1 (La.App. 3 Cir. 11/22/17) [2017 WL 5627774] (unpublished opinion.) Accordingly, Defendant's sentence is amended to delete the trial court's statement regarding diminution eligibility, and the trial court is instructed to make an entry in the minutes reflecting the amendment. *See State v. Drummer*, 17-790 (La.App. 3 Cir. 6/6/18), 245 So.3d 93, *writ denied*, 18-1139 (La. 2/11/19), 263 So.3d 413.

11

*See also State v. Burton*, 18-935, p. 2 (La.App. 3 Cir. 6/5/19), 274 So.3d 122, 126, *reversed on other grounds*, 19-1079 (La. 6/30/21), 320 So.3d 1117 (emphasis in original), where this court found that the trial judge's statement, "Those are going to be concurrent with one another. Okay. *The sentence is not subject to diminution for good behavior, sir.* Was not enhanced upon any type of habitual offender or any commission of firearm while in the possession[,]" amounted to a denial of diminution of sentence.

We find that the trial court's statement in the present case was an actual denial of diminution of sentence as it is more like the statements at issue in *Davis* and *Burton,* and it also references La.R.S. 15:537, which, according to *Prejean* and *Fallon*, is directed to the Department of Corrections. For these reasons and as discussed below, we vacate Defendant's sentence and remand the case for resentencing due to an illegality.

Although the trial court in the present case did not state that Defendant was ineligible for good time or that good time was otherwise denied, the trial court referenced La.R.S. 15:537 when it stated that Defendant was "being sentenced under 15:537." Additionally, the minutes of sentencing state that Defendant's sentences were to be served without good time. Consequently, we find the trial court improperly sentenced Defendant "under 15:537" and hereby order the sentences be amended to delete the trial court's statement. Additionally, the trial court is instructed to make an entry in the minutes reflecting the amendment.

Lastly, the minutes of sentencing should be corrected to clearly reflect that the trial court imposed a sentence on each count. The minutes of sentencing state the following, in pertinent part:

Court sentenced accused for (3) COUNTS PORNOGRAPHY W/ JUVENILES (under the age of 13). Court sentenced accused to be committed to the Louisiana Department of Corrections. Accused to serve 010 Year(s). Sentence is to be served at Hard Labor. Sentence is to run concurrent. Sentence is to be without benefit of parole, probation, suspension of sentence and without good time. Defendant is given credit for time served. Furthermore, Court ordered defendant to register as a sex offender for 25 YRS. Court also sentenced accused for (3) COUNTS PORNOGRAPHY W/ JUVENILES (under the age of 17). Court sentenced accused to be committed to the

Louisiana Department of Corrections. Accused to serve 005 Year(s). Sentence is to be served at Hard Labor. Sentence is to run concurrent. Sentence to be without benefit of parole, probation, suspension of sentence and without good time.

Although the minutes state that there are three counts of each offense, the minutes indicate that a single sentence was pronounced for each set of convictions. According to the transcript of sentencing, however, the trial court specified that the sentence it pronounced applied to "each count" of pornography involving a juvenile under the age of thirteen and "each count" of pornography involving a juvenile under the age of seventeen. "[W]hen the minutes and the transcript conflict, the transcript prevails." *State v. Wommack*, 00-137, p. 4 (La.App. 3 Cir. 6/7/00), 770 So.2d 365, 369, *writ denied*, 00-2051 (La. 9/21/01), 797 So.2d 62. Accordingly, the trial court is ordered to correct the minutes of sentencing to accurately reflect that the trial court imposed the sentences on "each count."

## ASSIGNMENT OF ERROR NUMBER ONE

Defendant contends the State did not prove he knowingly and intentionally possessed child pornography; thus, his convictions should be reversed and acquittals entered. Defendant contends that the audio quality of his recorded interview with law enforcement was much clearer than the sound clarity in the van where he was being questioned. According to Defendant, the engine, generator noise, and music playing in the background prevented him from clearly hearing and understanding the wording of the officers' questions. Defendant contends that he thought he was admitting to having pornography in general; thus, he did not actually admit to having child pornography on his phone.

In addition, Defendant contends that of the videos he *did* watch, he could not tell the ages of the children because their faces were obscured. Further, he notes

that the State's witness Agent Gohn could not confirm that Defendant viewed any particular video. He contends that because the State did not prove he *intentionally* possessed the child pornography, his convictions should be reversed. Alternatively, he contends that even if there was sufficient evidence presented to show he possessed child pornography, the evidence was insufficient to prove the children in the videos in Counts 1-3 were under the age of thirteen. There was no proof Defendant actually viewed the videos, and even if he had, Agent Gohn conceded that the actual ages of the girls in the videos were unknown. Defendant contends that although the girls in the videos appear young, the State did not prove beyond a reasonable doubt that they were under the age of thirteen. Accordingly, Defendant contends his convictions for these counts should be reversed and his case remanded for resentencing under La.R.S. 14:81.1(E)(1)(a).

The State contends that the six videos found in Defendant's possession along with his admission to possessing the child pornographic materials were sufficient to show intentional possession. As for the six videos, the State contends they clearly met the elements of the offenses, both for the children under the age of thirteen (Counts 1-3) and under the age of seventeen (Counts 4-6).

Louisiana Revised Statutes 14:81.1(A)(1) makes it illegal for a person to possess pornography involving juveniles. "Pornography involving juveniles" is defined in La.R.S. 14:81.1(B)(8) as "any photograph, videotape, film, or other reproduction, whether electronic or otherwise, of any sexual performance involving a child under the age of seventeen." "Sexual performance" is defined in La.R.S. 14:81.1(B)(10) as "any performance or part thereof that includes actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sadomasochistic abuse, or lewd exhibition of the genitals or anus."

14

> Pornography involving juveniles is a general intent crime. See *State v. Cinel*, 94-0942 (La.11/30/94), 646 So.2d 309, *cert. denied*, 516 U.S. 881, 116 S.Ct. 215, 133 L.Ed.2d 146 (1995). General criminal intent is present when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act. La. R.S. 14:10(2). The words "intentional possession," taken in their usual sense, mean that the individual knowingly and voluntarily possessed the pornography, in contrast to circumstances in which a person downloads images from the internet without realizing that some images included in the download were child pornography. *State v. Horton*, 42,199 (La.App.2d Cir.06/20/07), 962 So.2d 459, 466, *writ denied*, 07-1819 (La.01/25/08), 973 So.2d 755.

*State v. Wright*, 45,980, p. 7 (La.App. 2 Cir. 1/26/11), 57 So.3d 465, 470,

*writ denied*, 11-421 (La. 9/2/11), 68 So.3d 520.

The ages of the victims determine which penalty provision applies. In Counts 1-3, the State alleged the children were under the age of thirteen, while in Counts 4-6, the State alleged the children were under the age of seventeen.

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing evidence in light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d. 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 Led.2d. 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d. 559 (La. 1983); *State v. Duncan*, 420 So.2d. 1105 (La. 1982); *State v. Moody*, 393 So.2d. 1212 (La. 1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d. 559 (*citing State v. Richardson*, 425 So.2d. 1228 (La. 1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

When asked about the morning of the search, Defendant testified that he got up, bathed, and was about to play "[his] game" when officers knocked on the door.

When his father opened the door, officers hit the door. He testified that during his interview, the truck (van) was really loud, Agent Gohn and the other officer were laughing, and at one point, music was playing, making it hard for him to hear what Agent Gohn was saying. Defendant said he did not hear the words "child porn" used. Defendant explained that he sounded "clear and convincing" on the audio recording played in court, but he had trouble with his words, and it was hard for him to express his thoughts. He said he did not hear his *Miranda* rights being read due to Agent Gohn speaking fast and the noise level in the van. Even if he heard them, he testified he would not know what they meant because he had had no previous interaction with law enforcement.

Defendant admitted he sometimes looked at pornography, catching a glimpse on Twitter or seeing it on the television screen when he passed through the living room when his father was watching it. That was how he learned the names "Pornhub, X videos and stuff like that."

Defendant was asked whether he said during the interview that he was addicted to porn, but he explained he did not hear Agent Gohn say "child" porn. He testified that he had possibly viewed child porn by accident, but he did not know what "the children or adult like female bodies look like." He testified that he had never intentionally saved porn on his phone. He was asked why in the interview he said that he may have viewed child porn within the past month; he explained that he was not sure what "pops up" on his father's screen, and because he did not really pay much attention, he was not able to see if it was child pornography or not. Also, when scrolling on Twitter, random pictures of porn show up, but he said he would not look at them. When asked why, he said, "let's

16

just say yes." When he was asked if he had viewed child porn within the past month, Defendant responded:

> I was unsure of what to say but I felt like if I didn't say it, bad things may happen to me or my dad or you know just like that I felt pressured into saying it. Because I really [do not] talk to that many people. And especially not law officers, special agents.

Defendant was asked why he responded that he could see how someone could view him as being addicted to porn, and he explained:

> Because dealing with sexual topics and stuff, if people like watch it a bunch and stuff, people tend to view it – they're addicted just like with drugs and stuff. If you watch it or use it a lot of time, people just think that you're addicted to using or viewing said things I'm not sure that makes any sense.

Defendant recalled telling Agent Gohn that the only electronic device in the house that would have child porn on it was his phone, explaining:

> And the reason why I said that is because he was having like all the information – I thought he had like all the information for I was just saying yes, this is where you should. Like the only place you would find it because I don't use my other phones. Apparently he – it's hard to explain but I don't use my other phones. They're, as I stated on the tape, one you can't turn on. It doesn't have a battery. The charging port is broken. And the other one I used when I was in middle school. And I don't use my computer because it was also broken. So that would probably be the only place he will have it. I know it's weird not probably explaining it right. But I'm trying my best. A person with no social experience.

Defendant denied ever touching a child or being addicted to porn or child porn. He testified that although he told Agent Gohn that he talked to guys that he traded porn with, he explained he did not hear Agent Gohn say "child pornography"; he could only hear the "orn part" because of the noise created by the generator. About the noise in the van, Defendant explained:

> Sometimes I didn't hear the whole sentence. Sometimes I only heard the last sentence. Sometimes I only heard like the middle of a sentence. The engine is weird. But you guys fully must have heard it

on the audio. I may, I know it may not seemed loud then, but it was really loud in person.

As stated above, during the interview, Defendant was asked why he looked at child porn and what excited him about it; Defendant said, "I don't know. Nothing in particular." When asked at trial about this answer, Defendant said he did not recall hearing this. He again referred to the noise and his inability to hear, adding that the officers would emphasize the word "porn" and speak lower when they said "child." Near the end of his testimony, Defendant explained that the truck engine or generator prevented him from hearing most of what the agents were saying and that he was responding because he felt he had to. He said he was pressured and he was not really thinking about what he was saying; it was not because he did not hear the world "child."

On redirect examination, Defendant testified that importing meant everything was downloaded from Mega to his phone, and he did not have to view it. He said he did not see everything, only the name of a folder and three videos that were related to gaming, and he imported them because he thought all the content was gaming related. He said the only time he viewed Pornhub was when he occasionally walked past the television at night to get a drink or something to eat, and his dad was watching porn. When counsel asked Defendant if he knew the difference between pornography and child pornography, Defendant replied:

> I can't really say I did. Cause like I said I was just trying to seem normal when I said I masturbated and said I watched porn like all the time. But I'm really not a normal person. The only things I really like doing is [sic] playing my game, watching Animae, watching Netflix occasionally. I don't like talking to people. I don't like watching porn. I just, I like to stay to myself and because of that, I've never really had any interactions with women so I would not be able to tell the difference especially in the videos that y'all were shown. I don't think they had any faces or anything like that. So I really would not be able to tell if I saw them. Like you guys had to.

18

I'm really sorry about that. I'm really sorry that you guys had to see that.

There were six videos forming the basis for the six charges in this case. In the first three videos (Counts 1-3), there is no question that the child in each video is under the age of thirteen, and in the second three (Counts 4-6), there is no question that the child in each video is under the age of seventeen.

This court reviewed the audio recording of the interview between Defendant and the agents. It was clear, and although the background hum of the generator could be heard early on, it was not loud and did not take away from the clarity of the words said by anyone. Even if the noise level in the van was not accurately reflected on the recording, there was no indication that Defendant did not understand what was being asked. He provided relevant responses to the questions, and he never expressed confusion/misunderstanding or inability to hear the question being asked of him. During the interview, Defendant admitted that he watched child pornography and that he possessed it on his cell phone. At trial, he was able to explain his responses to the agents' questions and describe his fear/confusion due to the situation. The jury was presented with this evidence and made a credibility determination which was resolved against Defendant. It is not this court's place to second-guess that determination, and considering the evidence presented, we find sufficient evidence was presented by the State to prove Defendant intentionally possessed three pornographic videos involving a child under the age of thirteen and three pornographic videos involving a child under the age of seventeen beyond a reasonable doubt. We find this assignment of error has no merit.

**ASSIGNMENT OF ERROR NUMBER TWO**

In this assignment of error, Defendant claims trial counsel was ineffective in failing to object to the jury instructions which included the provision that "lack of knowledge of the juvenile's age shall not be a defense," which has been found unconstitutional. La.R.S. 14:81.1(D)(1).

> To establish an ineffective assistance of counsel claim, a petitioner must show that: (1) his defense counsel's performance was deficient, which requires a showing that counsel's errors were so serious that he failed to function as that "counsel" guaranteed by the Sixth Amendment; and (2) the deficient performance so prejudiced the defense that the defendant was deprived of a fair trial, which is one "whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Both showings must be made before it can be found that the defendant's conviction "resulted from a breakdown in the adversary process that render[ed] the trial result unreliable." *Id*. The proper standard for attorney performance is not perfect assistance. Rather, it is "reasonably effective assistance" of counsel. *Id*.

> An accused cannot prove ineffective assistance of counsel by merely making allegations of ineffectiveness. Instead, "the accused must couple these allegations with a *specific showing of prejudice*." *State v. James*, 95-962, p. 5 (La.App. 3 Cir. 2/14/96), 670 So.2d 461, 465 (emphasis in original). In order to determine whether the alleged ineffectiveness prejudiced the defendant, the defendant "must show that but for counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different." *State v. Jones*, 33,657, p. 11 (La.App. 2 Cir. 8/23/00), 765 So.2d 1191, 1199, *writ denied*, 00-2779 (La. 6/29/01), 794 So.2d 825.

*State v. Deville*, 22-350, pp. 23-24 (La.App. 3 Cir. 11/23/22), 354 So.3d 99, 112-13

(alteration in original).

> Generally, an ineffective assistance of counsel claim is most appropriately addressed through an application for post-conviction relief filed in the district court, where a full evidentiary hearing can be conducted, if necessary, rather than by direct appeal. State v. Ferrera, 16-243 (La. App. 5 Cir. 12/14/16), 208 So.3d 1060, 1066-67. However, when the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised in an assignment of error on appeal, it may be addressed in the interest of judicial economy. Id. at 1067. If, on the other hand, the record does not contain sufficient evidence to fully explore a claim of ineffective

assistance of counsel, the claim should be relegated to post-conviction proceedings. Id.

*State v. Jennings*, 20-97, p. 20 (La.App. 3 Cir. 7/15/20), 304 So.3d 494, 506, *writ denied,* 20-1251 (La. 3/9/21), 312 So.3d 586, *cert. denied*, __ U.S. __, 142 S.Ct. 146 (2021).

Defendant correctly asserts that the provision regarding lack of knowledge of the juvenile's age unavailability as a defense has been ruled unconstitutional:

> In [*State v.*] *Cinel* [94-942 (La. 11/30/94), 646 So.2d 309], this Court upheld a district court ruling striking the portion of the child pornography statute, R.S. 14:81.1, that, like subpart (C)(2) here, precluded the defendant from asserting lack of knowledge of the victim's age as a defense. *Cinel*, 94-0942, p. 1, 646 So.2d at 311. The Court found that, notwithstanding the considerable leeway afforded to the state to prohibit child pornography, First Amendment considerations preclude the state from dispensing with the scienter element regarding the performer's age. *Id.*, 94-0942, p. 11, 646 So.2d at 317. *See* [*State v.*] *Granier*, 99-3511, p. 5, [(La. 7/6/00)], 765 So.2d [998] at 1001 (distinguishing *Cinel*). *Cinel* is also in accord with *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994), in which the Supreme Court held that knowledge of the age of the performer for purposes of a child pornography charge was an "elemental fact" to which the scienter requirement must be applied, because non-obscene, sexually explicit materials involving adults are protected by the First Amendment. *Id.* at 72, 115 S.Ct. 464. In other words, absent the presence of the underage performers, the conduct itself is not illegal.

*State v. Sims*, 15-2163, pp. 10-11 (La. 6/29/16), 195 So.3d 441, 448.

In the present case, the trial court instructed the jury as to the factors which may be considered to determine the age of an individual, set forth in La.R.S. 14:81.1(G). The court then, with no objection by the defense, instructed the jury that "[l]ack of knowledge of the juveniles age shall not be a defense."

This court previously addressed a similar issue in *State v. Frinks*, 18-899, pp. 16-18 (La.App. 3 Cir. 6/12/19), 274 So.3d 635, 647-48 (last alteration in

original), *writ granted on other grounds,* 19-1145 (La. 6/3/20), 296 So.3d 1021, *and writ granted on other grounds*, 19-1217 (La. 6/3/20), 296 So.3d 1031, stating:

> In his third assignment of error, Defendant contends he was deprived of a fair trial because the trial court incorrectly instructed the jury that the State needed to prove he had specific intent to kill or commit great bodily harm in order to convict him of either the charged offense of attempted second degree murder or the lesser included offense of attempted manslaughter. Defendant observes that the trial court mentioned specific intent to commit great bodily harm in its initial instruction and again when the jury asked to hear the definition of manslaughter again. Defense counsel did not object, but this is not necessarily fatal to the argument. *State v. Cavazos*, 610 So.2d 127 (La.1992.)
>
> As noted in [*State v.*] Lambert [, 52,004 (La.App 2 Cir. 5/23/18), 248 So.3d 621], a conviction for attempted manslaughter requires the State to prove specific intent to kill; intent to cause great bodily harm is not sufficient. Furthermore:
>
>> The defendant was charged with attempted second degree murder. The jury returned a compromise responsive verdict of attempted manslaughter, as allowed under La.C.Cr.P. Art. 814. If the evidence adduced at trial was sufficient to support a conviction of the charged offense, the jury's verdict is authorized. *State v. Holland*, 544 So.2d 461 (La.App. 2d Cir.1989), writ denied, 567 So.2d 93 (La.1990).
>>
>> A specific intent to kill is an essential element of the crime of attempted second degree murder, and also of the responsive crime of attempted manslaughter. *State v. Dean*, 528 So.2d 679 (La.App. 2d Cir.1988); *State v. Turner*, 440 So.2d 834 (La.App. 2d Cir.1983). A conviction for an attempted offense must rest upon sufficient proof that the offender actively desired to cause the proscribed criminal consequences to follow his act or failure to act and that the offender committed or omitted an act for the purpose and tending directly toward the accomplishing of his object. *State v. Dean*, *supra*; La.R.S. 14:10 and 14:27.
>
> *State v. Sellen*, 28,191, p. 5 (La.App. 2 Cir. 6/26/96), 677 So.2d 578, 581.
>
>> However, all constitutional errors are not structural and indeed, most are amenable to harmless error analysis. *Sullivan* [*v. Louisiana*], 508 U.S. [275] at 278-79, 113

S.Ct. [2078] at 2081 (citing to *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)).  An invalid instruction on the elements of an offense is harmless if the evidence is otherwise sufficient to support the jury's verdict and the jury would have reached the same result if it had never heard the erroneous instruction.  *E.g., Rose v. Clark*, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986); *State v. West*, 568 So.2d 1019 (La.1990) (following *Rose*).  The determination is based upon "whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error." *Sullivan*, 508 U.S. at 279, 113 S.Ct. at 2081; *State v. Bourque*, 622 So.2d 198, 241 n. 20 (La.1993)(citing *Sullivan*).  As repeatedly stated by the United States Supreme Court, "[a] defendant is entitled to a fair trial but not a perfect one." *E.g., Bruton v. United States*, 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476 (1968).

*State v. Hongo*, 96-2060, p. 4 (La. 12/2/97), 706 So.2d 419, 421 (footnote omitted).

Defendant's brief includes *Hongo* and acknowledges the harmless error analysis but contends the error here was not harmless.  As already discussed, we find that the evidence was sufficient to satisfy the State's burden, beyond a reasonable doubt, of proving Defendant had specific intent *to kill* Mr. James, who suffered a serious chest wound and had a collapsed lung.  Under *Hongo*, the trial court's inaccurate instruction regarding specific intent in the instant case is harmless error because the jury would have reached the same verdict given the sufficiency of the evidence.  Accordingly, this assignment of error lacks merit.

While an erroneous jury instruction on reasonable doubt is not subject to a harmless error analysis, it is distinguishable from other types of erroneous instructions:

In *State v. Cage*, 583 So.2d 1125 (La.1991), *cert. denied*, 502 U.S. 874, 112 S.Ct. 211, 116 L.Ed.2d 170 (1991), the Louisiana Supreme Court stated that an improper jury instruction is a trial error and is subject to a harmless error analysis.  We are mindful that the United States Supreme Court held that an erroneous jury instruction on reasonable doubt is not subject to harmless error.  See *Sullivan v. Louisiana*, [508] U.S. [275], 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).  Nonetheless, we do not believe that the reasoning and analysis used by the *Sullivan* court are applicable in this instance.  In *Sullivan*, the

court held that a constitutionally deficient reasonable doubt instruction vitiates the jury's findings and will always result in the absence of an appropriate "beyond a reasonable doubt" jury finding. Such a structural defect in the trial mechanism is not subject to a harmless error.

However, the erroneous instruction in the instant case concerned self-defense, and the existence of self-defense merely presents exculpatory circumstances which defeat culpability without negating the state's proof beyond a reasonable doubt of all the essential elements of the offense. See *State v. Barnes*, 491 So.2d 42 (La.App. 5 Cir.1986). As such the instruction is subject to a harmless error analysis.

The proper analysis for determining harmless error as stated by the Supreme Court is, "not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in the instant trial was surely unattributable to the error". *Sullivan v. Louisiana*, supra, [508] U.S. at [279], 113 S.Ct. at 2081; *State v.Code*, 627 So.2d 1373 (La.1993), cert. denied, [511] U.S. [1100], 114 S.Ct. 1870, 128 L.Ed.2d 491 (1994).

In the instant case the evidence overwhelmingly established that the defendant fired upon police officers as they attempted to enter the building to execute a search warrant, thereby negating any claim of self-defense. Therefore, we do not find that the defendant's conviction was attributable to the erroneous instruction. Thus, we find the erroneous instruction to be harmless error.

*State v. Richardson*, 92-836, pp. 5-6 (La.App. 5 Cir. 12/14/94), 648 So.2d 945, 948, *writ denied*, 95-343 (La. 6/23/95), 656 So.2d 1011.

We find the improper jury instruction in this case was harmless error. As discussed in the previous assignment of error, the evidence was sufficient to prove beyond a reasonable doubt that Defendant intentionally possessed child pornography involving children under the ages of thirteen (Counts 1-3) and seventeen (Counts 4-6). We find the jury's verdicts were not attributable to the erroneous instruction, but to the evidence before it. Thus, while counsel's performance may have been deficient due to his failure to object to the erroneous

24

instruction, Defendant suffered no prejudice, rendering his claim of ineffective assistance of counsel meritless. Accordingly, this assignment of error has no merit.

## PRO SE BRIEF

In his pro se brief, Defendant contends his trial counsel was ineffective in failing to inform him of the amended bill of information filed by the State and in failing to use witnesses Charlie and Curtis Gunter at trial. Additionally, Defendant contends counsel was ineffective in withdrawing his motion to suppress because it denied Defendant a chance to challenge the admissibility of his statement at a suppression hearing. He contends that if "the motion to suppress went through my trial would have gone differently."

We find Defendant's claims that counsel failed to inform him of the filing of the amended bill of information and failure to explain its meaning as well as his failure to call two witnesses for trial can be addressed on appeal. Defendant simply makes these allegations without any specific showing of prejudice. Accordingly, these claims of ineffectiveness are denied as meritless.

As for Defendant's claim concerning the withdrawal of his motion to suppress, we note defense counsel filed a motion to suppress Defendant's statement on May 5, 2021. The matter was set for hearing on June 2, 2021. Five days later, the State filed a response. Court minutes dated June 2, 2021, indicate defense counsel waived Defendant's presence and withdrew his motion to suppress and motion to produce records. Later, at trial, defense counsel stated there had been a ruling on the suppression motion, but he was supposed to reurge the motion at trial. The State noted that the motion had been withdrawn, but some confusion ensued as to whether both the suppression motion and the motion for production were withdrawn, or whether it was only the motion for production. The trial judge

25

encouraged defense counsel to reurge the motion to suppress. She subsequently denied the motion finding Defendant's statement was not the result of a custodial interrogation. Defense counsel objected to the court's ruling.

We find Defendant's claim has no merit. To show counsel was ineffective Defendant must show counsel's performance was deficient and that the deficient performance was so prejudicial that he was deprived of a fair trial. Defendant has shown neither. While counsel may have withdrawn the motion to suppress, he reurged it at trial where it was considered and denied.

## CONCLUSION

Defendant's convictions and sentences are hereby affirmed. We order the sentences amended to delete the trial court's statement that Defendant was "being sentenced under 15:537" and instruct the trial court to make an entry in the minutes reflecting this amendment. Additionally, this court orders the trial court to correct the minutes of sentencing to accurately reflect that the trial court imposed the sentences on "each count."

**AFFIRMED AS AMENDED; REMANDED WITH INSTRUCTIONS.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.